UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| O'CONNOR ENTERPRISE GROUP INC.; dba EPCGROUP.NET, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-1483 |
| | § | |
| SPINDUSTRY SYSTEMS INCORPORATED; dba SPINDUSTRY INTERACTIVE, INC., *et al*, | § § § § | |
| Defendants. | § § | |

**OPINION AND ORDER**

Pending before the Court are Defendants Federal Home Loan Bank of Des Moines' ("FHLB") and Spindustry Systems, Inc.'s ("Spindustry") motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) or, alternatively, to transfer venue (Docs. 4, 5), as well as Plaintiff O'Connor Enterprise Group, Inc.'s ("EPC") response (Doc. 10), Defendants' replies (Docs. 11, 13), EPC's surreply (Doc. 14), and FHLB's supplement to its motion (Doc. 17). Upon review and consideration of these motions, the response, replies, and surreply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendants' motions to dismiss should be granted.

I. Background and Relevant Facts

This case stems from a contract dispute. On August 16, 2007, FHLB entered into a contract with Spindustry to convert its home loan application process ("the Project") from a manual, paper-based system to an automated, electronic process. (Doc. 1, ¶¶ 9–10; Doc. 4, ¶ 6.) Spindustry subcontracted with EPC to implement the computerized application process using Microsoft's SharePoint system. (Doc. 1, ¶ 11; Doc. 5, ¶ 2.) FHLB is a federally chartered bank

that solely conducts business in Iowa, Minnesota, Missouri, North Dakota and South Dakota. (Doc. 4, ¶¶ 4, 5.)  Spindustry is an Iowa corporation operating exclusively in Iowa.  (Doc. 5, ¶ 1.) EPC is a Nevada corporation with its principal place of business in Houston, Texas.  (Doc. 1, ¶ 2.)

On or about January 29, 2008, Spindustry and EPC submitted their proposal for the Project to FHLB.  (Doc. 13, ¶ 2.)  FHLB accepted the proposal and a "kick-off" meeting between EPC, Spindustry, and FHLB representatives was held in Iowa on March 18, 2008. (Doc. 1, ¶ 12.)  The parties agreed on a project plan and set a target completion date for September 2008.  (*Id.*)  Correspondence between the parties regarding the Project was conducted exclusively by telephone, e-mail, and video conference.  (Doc. 1-1, ¶ 12.)  Neither Spindustry nor FHLB employees ever traveled to Texas for the Project.  (Doc. 5, ¶ 2; Doc. 4, ¶ 8.)

In June 2008, FHLB hired a new manager for the Project who requested changes to the existing plan. (Doc. 1-1, ¶ 13.)  These changes delayed the Project's completion until January 2009.  (*Id.*)  Upon completion, and in reliance on its contract with Spindustry, EPC released the source code for the Project to FHLB.  (*Id.*, ¶ 15.)  FHLB claims it is experiencing problems with the system and has not paid EPC for its work.  (*Id.*, ¶ 16.)

On April 16, 2009, EPC filed its original petition in the 125th Judicial District Court of Harris County, Texas.  (Doc. 1-1.)  FHLB removed the case to this Court on May 18, 2009. (Doc. 1.)  EPC alleges that FHLB, with and through its agent, Spindustry, breached the contract between Spindustry and EPC by failing to pay EPC for its services.  (Doc. 1-1, ¶¶ 19–20.)  EPC also alleges that the Defendants negligently misrepresented that they would pay EPC for the work completed.  (*Id.*, ¶ 22–23.)  Finally, EPC claims that FHLB wrongfully converted its system and will be unjustly enriched if it is not paid.  (*Id.*, ¶¶ 25–28.)  EPC sues for actual

damages in the contract amount for its work on the Project, attorneys' fees and costs, and prejudgment and post-judgment interest as allowed by law. (*Id.*, ¶ 29–30.) FHLB denies any contractual relationship with EPC and states that it was unaware of the agreement between Spindustry and EPC. (Doc. 4, ¶¶ 6, 13.) FHLB contends it communicated with EPC only in connection with Spindustry's performance under the agreement. (*Id.*, ¶ 7.) Both FHLB and Spindustry move to dismiss the suit on the ground that the Court lacks personal jurisdiction over them.

II. Legal Standard for Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss in cases where the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Federal courts use a two-part test to determine personal jurisdiction. "A federal district court sitting in diversity may exercise jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Texas long-arm statute is "coextensive with the federal constitutional limits of due process and normally generates an inquiry limited to the scope of the Fourteenth Amendment's Due Process Clause." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008) (citing *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003)).

In determining whether a federal district court may exercise personal jurisdiction over a nonresident defendant, the court concentrates on whether the defendant has "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311

U.S. 457, 463 (1940)). Minimum contacts may be established through specific personal jurisdiction or general personal jurisdiction. In deciding whether to exercise specific jurisdiction over a nonresident defendant, the Court must find that (1) the defendant purposefully directed his activities toward the forum state; (2) the cause of action arises out of or results from those contacts; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 463. The first element is satisfied where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp.*, 471 U.S. at 475 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)); *Kulko v. Superior Court of California In and For City and County of San Francisco*, 436 U.S. 84, 94 n.7 (1978). If the defendant has deliberately engaged in significant activities within the forum state or has created "continuing obligations" between himself and forum state residents, then "he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 475–76 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

If a cause of action arises out of a defendant's purposeful contacts with the forum state, minimum contacts are established, and the court may exercise specific personal jurisdiction. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). "Even a single, substantial act directed toward the forum can support specific jurisdiction." *Dalton*, 897 F.2d at 1361 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). If the plaintiff establishes minimum contacts between the nonresident defendant and the forum state, the burden then shifts to the defendant to

show that it would be unfair and unreasonable for the court to exercise jurisdiction. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

Where a cause of action does not arise out of a nonresident defendant's purposeful contacts with the forum state, "due process requires that the defendant have engaged in 'continuous and systematic contacts' in the forum state to support the exercise of 'general' jurisdiction over that defendant." *Dalton*, 897 F.2d at 1362 (citing *Helicopteros*, 466 U.S. at 415). For a court to exercise general personal jurisdiction, the plaintiff must show that the minimum contacts between the nonresident defendant and the forum state are of a "more extensive quality and nature" than those required for specific personal jurisdiction. *Dalton*, 897 F.2d at 1362 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447 (1952)).

The plaintiff has the burden of making a *prima facie* showing that the court indeed has personal jurisdiction over a nonresident defendant. *Revell v. Lidov*, 317 F.3d at 467, 469 (5th Cir. 1999). In deciding whether personal jurisdiction is present, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). Additionally, the court "must accept the plaintiff's 'uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Id.* (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

III. Discussion

It is undisputed that neither FHLB nor Spindustry have business operations, offices, employees, registered agents for service of process, licenses to conduct business, or ownership of real property in Texas. (Doc. 4, ¶ 19; Doc. 5, ¶ 9.) EPC argues the Court has general

jurisdiction over Spindustry because Spindustry retained EPC for a prior unrelated project. (Doc. 10 at 11.) Spindustry's single prior agreement with EPC does not constitute continuous and systematic contacts with Texas. *Helicopteros*, 466 U.S. at 414–16; *see Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (holding that a nonresident defendant's contacts with the forum, which included regularly receiving shipments in Texas and sending sales people to Texas to develop business and negotiate contracts, was "clearly not substantial enough to justify subjecting [it] to suit in the [forum] based on a theory of general personal jurisdiction."). EPC therefore cannot establish general jurisdiction over Spindustry.

EPC impliedly concedes that FHLB lacks requisite minimum contacts with Texas, but argues that specific personal jurisdiction should be imputed over FHLB. EPC argues that the Court should find specific jurisdiction over FHLB and Spindustry because Spindustry, acting on behalf of itself and FHLB, contracted with EPC and communicated with EPC via numerous e-mails, telephone calls, and virtual conferences in furtherance of that contract. (Doc. 10 at 2.) These factors, however, are insufficient to establish specific personal jurisdiction. "[T]he existence of a contractual relationship, although relevant, does not automatically establish sufficient minimum contacts." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 337 (5th Cir. 1999) (citing *Burger King*, 471 U.S. at 478). Similarly, communicating with a resident of the forum state during the course of carrying out a contract does not subject a nonresident to the jurisdiction of the resident's state. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1146–47 (5th Cir. 1985); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1031 (5th Cir. 1983).

EPC cites *Central Freight Lines* for the proposition that its performance under the contract within the forum state was foreseeable to the Defendants and should therefore subject

them to specific personal jurisdiction. 322 F.3d at 383. However, jurisdiction in *Central Freight Lines* was also supported by the defendant sending representatives to Texas, accepting goods shipped from Texas, and committing intentional torts directed at a Texas entity. *Id.* at 382–83. Here, however, the Project's meetings were held in Iowa and all of the Defendants' activities took place in Iowa, making Iowa "clearly the hub of the parties' activities." *Patterson*, 764 F.2d at 1147 (5th Cir. 1985) (quoting *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1010 (5th Cir. 1982). *Central Freight Lines* is also distinguishable because in that case, the plaintiff's location in Texas was strategically advantageous to the defendant and was the reason for the contact. By contrast, EPC's location in Texas was irrelevant and not advantageous to the Defendants. Defendants learned about EPC on the Internet and, aside from the meetings in Iowa, communicated with EPC exclusively via e-mail and telephone.

The Court finds that exercising personal jurisdiction over FHLB and Spindustry would contravene traditional notions of fair play and substantial justice. Defendants did not purposefully avail themselves of the "benefits and protections" of Texas laws. *Dalton*, 897 F.2d 1361 n.1 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Plaintiff EPC fails to make a *prima facie* showing that there are, in fact, minimum contacts between the Defendants and the State of Texas. As such, it would be improper for this Court to exercise jurisdiction over FHLB or Spindustry.

EPC requests permission to conduct limited discovery to determine the Defendants' contacts within Texas, if the Court finds it lacks personal jurisdiction over the Defendants. (Doc. 10 at 24.) Additional discovery is not appropriate, however, when EPC fails to make a *prima facie* case supporting jurisdiction.

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendants Federal Home Loan Bank of Des Moines' and Spindustry Systems, Inc.'s Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 4, 5) are GRANTED.

Defendants Federal Home Loan Bank of Des Moines and Spindustry Systems, Inc. are DISMISSED without prejudice.

SIGNED at Houston, Texas, this 13th day of July, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE